UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

BEACH TV CABLE COMPANY, INC. and
NEW ORLEANS TELEVISION, INC.

      Plaintiffs

vs                                               Case No. 5:22-cv-00148

SHAWN WALSH, LOVENOLATV, LLC
GLENN HAGGERTY and KEITH HAGGERTY

      Defendants

## COMPLAINT

Plaintiff Beach TV Cable Company, Inc. and Plaintiff New Orleans Television, Inc. (jointly "Plaintiffs"), by their attorney, allege as follows:

### Parties and Jurisdiction

1. Plaintiff Beach TV Cable Company, Inc. ("Plaintiff Beach TV") is a Florida corporation with its principal place of business in Panama City, Florida.

2. Plaintiff New Orleans Television, Inc. ("Plaintiff New Orleans Television") is a Florida corporation with its principal place of business in Panama City, Florida.

3. Defendant Shawn Walsh ("Defendant Walsh") is an individual and citizen of Louisiana.

4. Defendant Walsh, Defendants Glenn Hagerty and Defendant Keith Haggerty are Managing Partners of Defendant LOVENOLATV and referred to herein jointly and severally as the Defendant Managing Partners.

1

5. Defendant LOVENOLATV, LLC ("Defendant LOVENOLATV") is a Louisiana limited liability company. The members of Defendant LOVENOLATV are citizens of Louisiana.

6. Defendant Glenn Haggerty is an individual and citizen of Louisiana.

7. Defendant Keith Haggerty is an individual and citizen of Louisiana.

8. The Court has jurisdiction over the claims in this case pursuant to 28 U.S.C. §1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest.

**The NOTV Business**

9. The Plaintiffs jointly engage in a business commonly known as New Orleans Television ("NOTV"). NOTV has been in continuous operation since the 1990's.

10. NOTV broadcasts programming for tourists in New Orleans. The programming consists primarily of information a tourist in New Orleans would rely on to decide what attractions and events to attend and which restaurants and bars to patronize (the "NOTV Programming").

11. NOTV Programming is created by Plaintiffs in consultation with the owners and promoters of attractions, events, restaurants, and bars in New Orleans. Those companies pay Plaintiffs for the creation and distribution of the NOTV Programming (the "NOTV Advertisers").

12. NOTV Programming is broadcast over the air on a Class A low power television station.

13. The NOTV Programming is received by antennas owned and installed by Plaintiffs at more than one hundred (100) hotels in New Orleans with an aggregate of over 25,000 rooms (individually an "NOTV Hotel" and collectively "NOTV Hotels").

14. The NOTV Programming is received and processed at the NOTV Hotel by proprietary equipment owned and installed by Plaintiffs (the "NOTV Equipment").

15. The NOTV Programming is then transmitted on the internal cable wiring of the NOTV Hotel to each room where it can be displayed on the room's television set.

16. Plaintiffs have a contract with each NOTV Hotel for the distribution of NOTV Programming to the occupants of the NOTV Hotel (an "NOTV Hotel Contract").

17. The NOTV Hotel Contract typically requires the NOTV Hotel to provide a designated channel on its internal cable wiring for the exclusive distribution of the NOTV Programming.

18. The NOTV Hotel Contract has a multi-year term subject to automatic renewal (the "Term").

19. The Hotel Contract has specific requirements for termination prior to the end of the Term ("Termination Requirements").

**The Employment of Defendant Walsh by NOTV**

20. On or about May 31, 2013, Plaintiff Beach TV hired Defendant Walsh as the General Manager of NOTV pursuant to a written contract (the "Employment Contract"). A true copy of the Employment Contract is annexed as Exhibit A.

21. The Employment Contract provides in pertinent part that Defendant Walsh acknowledges:

Employer's services are highly specialized;

The identity and particular needs of the Employer's customers, prospects and contractors are not generally known in the industries served;

Employer has a proprietary interest in its design work product and customer lists;

Documents and other information regarding Employer's sales methods, pricing and costs, as well as information pertaining to Employer's customers, including, but not limited to, identity, location, service requirements, and charges to the customers, are highly confidential and constitute trade secrets.

22. The Employment Contract provides in Article VI – Non Disclosure of Confidential Information that:

Employee agrees that during the term of this Agreement and any extensions thereof, and for a period of twelve (12) months after the termination thereof, he will not, irrespective of the time, manner or cause of the termination of said employment, directly or indirectly, disclose to any person, firm or corporation, or use or apply, any confidential information which he shall have acquired, discovered, or developed, while an employee concerning or relating to the business of the Employer, including, but not limited to, client lists and client requirements, operation procedures, media and research plans and programs, methods of operation, systems, techniques, know-how, or financial and statistical data relating to the Employer's business. Employee acknowledges and agrees that all of the aforementioned property interests shall be and remain the sole property of the Employer and the Employee shall have no right title or interest therein.

23. The Employment Contract terminated on or about September 1, 2021, when Defendant Walsh left his position as General Manager of NOTV and went to work for Defendant LOVENOLATV.

24. From May 31, 2013 until the termination of the Employment Contract, Defendant Walsh worked as the General Manager of NOTV. In that capacity, Defendant Walsh learned the confidential and proprietary information owned by Plaintiffs necessary for the conduct of the business of NOTV (the "Confidential Information").

25. The Confidential Information learned by Defendant Walsh included, but is not limited to:

    a. The identity of each NOTV Hotel;

    b. The room count in each NOTV Hotel;

    c. The channel used to distribute NOTV Programming at each NOTV Hotel;

    d. The terms and conditions of each NOTV Hotel Contract, including the Term and Termination Requirements;

    e. The nature and operation of the NOTV Equipment;

    f. The specific content of NOTV Programming;

    g. The amounts paid by NOTV Advertisers for NOTV Programming;

    h. The NOTV Advertisers' specifications and requirements for NOTV Programming.

26. Many of the NOTV Hotel Contracts were obtained by Defendant Walsh while employed by Plaintiffs as the General Manager of NOTV using the Confidential Information.

27. Defendant LOVENOLATV was registered with the Louisiana Secretary of State as a limited liability company on November 16, 2021.

28. Using the services of Defendant Walsh, Defendant LOVENOLATV is engaged in a business that directly competes with NOTV.

29. On December 8, 2021, Defendant LOVENOLATV, using the services of Defendant Walsh, obtained the approval and recognition of the Greater New Orleans Hotel and Lodging Association "as the new Official Live, On-Demand & Streaming Television station of the New Orleans Tourism Industry."

30. Defendant LOVENOLATV claims it is providing the occupants of hotels in New Orleans "with fresh, authentic video content that best represents our beloved city's unique culture. This unique streaming service connects you to the power and joy of all things New Orleans with original content created and produced by New Orleanians. LOVENOLATV strives

to keep content fresh, authentic, exciting and on the cutting edge of hospitality & entertainment. By producing entertaining stories about New Orleans in a creative, thoughtfully produced, and eye-catching manner, all who see it come away with a lasting impression of what we represent."

31. The programming offered by Defendant LOVENOLATV is intended to appeal to the NOTV Advertisers and the occupants of NOTV Hotels.

32. Using the Confidential Information known by Defendant Walsh, Defendant LOVENOLATV and Defendant Managing Partners are and have been soliciting the NOTV Hotels to terminate the NOTV Hotel Contracts and replace NOTV Programming with the programming provided by Defendant LOVENOLATV.

33. Defendant LOVENOLATV and Defendant Managing Partners have, at all times relevant to this action, had actual knowledge of the Employment Contract.

34. Defendant LOVENOLATV and Defendant Managing Partners have, at all times relevant to this action, known the Confidential Information includes Plaintiffs' trade secrets.

35. The actions of Defendant LOVENOLATV to use the services of Defendant Walsh and obtain the Confidential Information have been knowingly and willfully directed by Defendant Managing Partners.

### Count One
### Damages for Breach of Contract

36. Plaintiffs repeat and reallege ¶¶1 to 35.

37. Defendant Walsh has breached the Employment Agreement by using and delivering the Confidential Information to Defendant LOVENOLATV for its use in competing with Plaintiffs in the NOTV Hotels.

38. Plaintiffs have been damaged by that breach in an amount to be determined but at least $75,000.

## Count Two
## Injunction Preventing a Breach of Contract

39. Plaintiffs repeat and reallege ¶¶1 to 38.

40. Defendant Walsh has and will continue to breach the Employment Agreement by using and delivering the Confidential Information to Defendant LOVENOLATV for its use in competing with Plaintiffs in the NOTV Hotels.

41. Plaintiffs do not have an adequate remedy at law for such breach.

## Count Three
## Tortious Interference With the Employment Contract

42. Plaintiffs repeat and reallege ¶¶1 to 41.

43. Defendant LOVENOLATV, Defendant Glenn Haggerty and Defendant Keith Haggerty have, jointly and severally and with full knowledge of the Employment Contract, solicited, obtained and used the Confidential Information known to Defendant Walsh to compete with Plaintiffs in the NOTV Hotels.

44. Defendant LOVENOLATV, Defendant Glenn Haggerty and Defendant Keith Haggerty, have, jointly and severally, knowingly and willfully induced Defendant Walsh to breach the Employment Contract and divulge the Confidential Information.

45. Plaintiffs have been damaged by the tortious interference by Defendant LOVENOLATV, Defendant Glenn Haggerty and Defendant Keith Haggerty in an amount to be determined but at least $75,000.

46. Plaintiffs will be damaged by the tortious interference by Defendant LOVENOLATV, Defendant Glenn Haggerty and Defendant Keith Haggerty with the Employment Contract in the future and do not have an adequate remedy at law for that tort.

## Count Four
## Violation of F.S.A. § 688.001 et seq.

47. Plaintiffs repeat and reallege ¶¶1 to 46.

48. Defendant LOVENOLATV and Defendant Managing Partners have, jointly and severally, violated F.S.A. § 688.001 et seq.

49. Plaintiffs have been damaged by that violation in an amount to be determined but at least $75,000.

50. Plaintiffs will be damaged by Defendants' violation F.S.A. § 688.001 et seq. in the future and do not have an adequate remedy at law for their violations.

## Count Five
## Aiding and Abetting by Defendant Walsh

51. Plaintiffs repeat and reallege ¶¶1 to 50.

52. Defendant Walsh has aided and abetted Defendant LOVENOLATV, Defendant Glenn Haggerty and Defendant Keith Haggerty in their tortious interference with the Employment Contract and violation of F.S.A. §688.001 by providing the Confidential Information to Defendant LOVENOLATV, knowing it included the Plaintiff's trade secrets and using the Confidential Information to obtain one or more contracts for Defendant LOVENOLATV with the NOTV Hotels.

53. Plaintiffs have been damaged by Defendant Walsh's aiding and abetting in an amount to be determined but at least $75,000.

54. Plaintiffs will be damaged by Defendant Walsh's aiding and abetting in the future and do not have an adequate remedy at law for that violation.

**WHEREFORE**

Plaintiffs respectfully request the entry of judgment in its favor against Defendants and the entry of an order that:

A. Enjoins Defendants from using the Confidential Information or disclosing it to anyone for at least one year after the entry of judgment.

B. Enjoins Defendants from soliciting any business from or doing any business with any NOTV Hotel for a period of at least one year after the entry of judgment.

C. Awards Plaintiffs money damages against Defendants jointly and severally in an amount to be determined but at least $75,000, together with costs and attorneys' fees.

D. Awards Plaintiffs punitive damages against Defendants jointly and severally in an amount to be determined but at least three times the amount of compensatory damages, not to exceed $500,000, together with costs and attorneys' fees.

E. Such other relief as the Court deems just and proper.

July 21, 2022

*W. James Mac Naughton*
W. James Mac Naughton, Esq.
7 Fredon Marksboro Road
Newton, NJ 07860
wjm@wjmesq.com
*Attorney for Plaintiff Beach TV Cable Company, Inc. Plaintiff New Orleans Television, Inc.*

# EXHIBIT A



## CONTRACT OF EMPLOYMENT

THIS AGREEMENT made, May 31, 2013 by and between Beach TV Cable Company, Inc., (hereinafter, together with all affiliates, referred to as the "Employer"), a corporation, organized and existing under the laws of the State of Florida, and Shawn Walsh (hereinafter referred to as the "Employee"), a resident of New Orleans, Louisiana.

WITNESSETH:

WHEREAS, the Employer desires to employ the Employee, and the Employee desires to accept such employment, on the terms and conditions hereinafter set forth, and;

WHEREAS, the Employer recognizes that the Employee has acquired knowledge, experience and skills that are of value to the Employer, and;

WHEREAS, Employer is in the business of providing advertising, web design, and travel and tourism information related services to the public on an interstate basis under various names and through affiliates, all of which are included in the term "Employer" as used in this Agreement, Employee acknowledges that:

(a) Employer's services are highly specialized;

(b) the identity and particular needs of the Employer's customers, prospects and contractors are not generally known in the industries served;

(c) Employer has a proprietary interest in its design work product and customer lists;

(d) documents and other information regarding Employer's sales methods, pricing and costs, as well as information pertaining to Employer's customers, including, but not limited to, identity, location, service requirements, and charges to the customers, are highly confidential and constitute trade secrets.

WHEREAS, the Employer possesses and uses certain trade secrets and maintains certain personal and confidential relationships with clients, prospects, contractors, employees and other parties, that will, of necessity, be communicated to or become known to the Employee because of his employment by the Employer, and;

WHEREAS, the Employee by virtue of his employment by the Employer, is privileged to enter into or become privy to these trade secrets and personal and confidential relationships with the clients, prospects, contractors, employees of the Employer, and;

WHEREAS, the Employer desires to protect and preserve said trade secrets and personal and confidential relationships for its own use both during the course of employment and in the event the employment relationship is terminated.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I
EMPLOYMENT

The Employer employs the Employee and the Employee hereby accepts employment in the position of <u>General Manager, New Orleans Television</u>, upon the terms and conditions hereinafter set forth.

ARTICLE II
TERM

The term of this Agreement may be terminated by either party upon sixty (60) day notice, in writing, to the other party.

ARTICLE III
COMPENSATION

A. For all services rendered by a salaried Employee, Employer shall pay the Employee annual salary or commissions (where applicable) for all sales according to the following standard structure:

**Draw against Commission:**
A draw of $2000 will be paid on the 15th day of the month and the balance paid on the final day of the month following billing and collections calculations and receipts.

**Full Commission Schedule:**
Based on receipts (Media and TripSmarter)

Paid on the final day of the month following billing calculations and receipts.
- 13% commission Current Month *
- 11% commission on one month past due *
- 9% commission 2nd month past due *
- 3% commission on 3rd month past due *
- 0% commission 4th month past due Accounts *

*Commissions are calculated via Calendar Month receipts based on deposit date, and applicable Calendar adjusted aging. Current is (31 days), one month past due (61 days), etc.
*Advertising Agency and *approved* National/Regional Account billing, which is collected up to 60 days, shall be considered current and commissions will be paid at net. Aging for these accounts for commission purposes will be extended 30 days.

**Full Commission Schedule:**
Based on receipts (Production)
- 5% commission Current Month *
- 4% commission on one month past due *
- 2% commission 2nd month past due *
- 1% commission on 3rd month past due *
- 0% commission 4th month past due Accounts *
- 

*Commissions are calculated via Calendar Month receipts based on deposit date, and applicable Calendar adjusted aging. Current is (31 days), one month past due (61 days), etc.
*Advertising Agency and *approved* National/Regional Account billing, which is collected up to 60 days, shall be considered current and commissions will be paid at net. Aging for these accounts for commission purposes will be extended 30 days.

**AE Bonus Program**

**Assumptions:**
1. AE must be on full commission

2. AE must have an approved budget which has been carefully considered with respect to the individual characteristics of the market and the individual expectations for the AE. Budgets are dynamically created so there is always a 12 month budget projection. Fourth Quarter budgets are reviewed quarterly and adjusted if necessary with the approval of the General Sales Manager and CEO.
3. If AE has approved budgets in multiple markets, AE must receive special and separate approval for bonuses in each market.
4. AE must be in good standing (no disciplinary actions); AE must be conducting business according to established Standard Operating Procedures and all ACT Opportunities and Tasks must be current and in good order.

**Bonus Calculations and Payments:**
1. Bonuses are paid only upon collections of billings in excess of Quarter budget, therefore bonuses are calculated and paid at the end of the Quarter following the Quarter in which the bonus was earned.
2. Bonuses are paid in the form of graduated commission percentages. Higher percentages are paid on the amounts billed and collected above the approved Quarter budget. Bonus percentages paid are:

| | |
|---|---|
| @ 10% increase | 13.5 |
| @ 20% increase | 14 |
| @ 30% increase | 14.5 |
| @ 40% increase | 15 |
| @ 50% increase | 15.5 |
| @ 60% increase | 16 |
| @ 70% increase | 16.5 |
| @ 80% increase | 17 |
| @ 90% increase | 17.5 |
| @ 100% increase | 18 |
| @ 110% increase | 18.5 |
| @ 120% increase | 19 |
| @ 130% increase | 19.5 |
| @ 140% increase | 20 |

B. BENEFITS: Employee shall be entitled to participate in such benefits as shall be offered to other employees of Employer who are of the same position and status as Employee. Further details of benefits shall be described in appropriate documents made available to employees generally. The parties agree that no salary shall be paid to Employee at any time or for any period when Employee is eligible for payments pursuant to any disability insurance plan maintained by Employer. Employer reserves the right to change or discontinue any such benefits. Employer agrees that Employee shall be offered any current or additional benefit or benefits to be offered employees generally during the term of the Employment Agreement on such terms and conditions as such benefit or benefits are offered to employees generally, except that it is expressly understood that nothing hereunder shall obligate the Employer to provide or continue to provide any such benefit or benefits which may, at any time, be offered all employees generally.

ARTICLE IV
DUTIES AND EXTENT OF SERVICES

The Employee shall devote his full time, attention and energies to the business of the Employer and shall render his best efforts in performing all those duties that shall be prescribed at any time and from time to time by the Employer. During the term of this Agreement, Employee agrees that he shall not be engaged in any other business activity or occupation, whether or not such business activity or occupation is pursued for gain, profit, or other pecuniary advantage which in any way conflicts or interferes with the business of the

Employer; provided, Employee shall have the right to engage in certain other business activities on a part time basis if Employer specifically approves such business activities, in writing, prior to Employee's engaging in said activities.

## ARTICLE V
## OWNERSHIP OF CREATED PROPERTY
## WORK-MADE-FOR-HIRE
## NONINFRINGEMENT AND INDEMNIFICATION

In consideration of Employee's employment by Employer, Employee agrees that any software, procedure, digital, graphic, artistic or other creative idea, work or production written, created or produced by Employee alone or in conjunction with others (a) within the scope of or in the performance of his duties as an employee of Employer, or (b) relating to or arising out of advertising or editorial programs, projects or campaigns, being carried on or being planned or considered by Employer during the period of Employee's employment by Employer, shall be deemed a work-made-for-hire and the sole and absolute property of Employer. Employee agrees to execute such other instruments as Employer may request in order to affect the provisions of this Article V, including without limiting the generality of the foregoing, applications for registration or assignments of copyrights or renewals thereof, patents and trademarks or trade names, or registrations and renewals of registrations thereof. Employer shall own all rights (including moral rights) and interests in such creative work. Employee shall not infringe or improperly convert or use the copyrighted or trademarked work of any other party while or in the course of performing Employee's duties for Employer. Employee will indemnify and hold Employer harmless for any violations of this provision.

## ARTICLE VI
## NON DISCLOSURE OF CONFIDENTIAL INFORMATION

As an inducement to Employer to enter into this Employment Agreement, Employee agrees that during the term of this Agreement and any extensions thereof, and for a period of twelve (12) months after the termination thereof, he will not, irrespective of the time, manner or cause of the termination of said employment, directly or indirectly, disclose to any person, firm or corporation, or use or apply, any confidential information which he shall have acquired, discovered, or developed, while an employee concerning or relating to the business of the Employer, including, but not limited to, client lists and client requirements, operation procedures, media and research plans and programs, methods of operation, systems, techniques, know-how, or financial and statistical data relating to the Employer's business. Employee acknowledges and agrees that all of the aforementioned property interests shall be and remain the sole property of the Employer and the Employee shall have no right title or interest therein.

## ARTICLE VII
## COVENANTS NOT TO COMPETE

In consideration of his employment by the Employer, and of the client lists, sales and marketing records, client requirements, operating techniques, and management training, all of a confidential nature, furnished to him by the Employer so that he may perform the operating duties of conducting Employer's Business including the provisions of all services normally and customarily supplied, separately or collectively, by television stations, video services or advertising agencies, and as a further inducement to Employer to enter into this Agreement, Employee agrees as follows and as to which any and all obligations shall survive the term of employment:

Employee agrees that during the term of his employment by Employer, and for a period of twelve (12) months from the date of termination thereof, irrespective of the manner of such termination, Employee shall not directly or indirectly, on his own behalf or through or for any entity or person other than Employer, solicit or accept employment or payment of any type from, or be associated with, directly or

indirectly, any Visitor Television Station or Website competing with Employer in any current or planned Destination Network market.

Employee agrees that during the term of this Agreement, and for period of twelve (12) months from the date of termination thereof, irrespective of the manner of the termination of said employment, Employee shall not directly or indirectly, on his own behalf or on behalf of one other than Employer, solicit, accept or seek any employment or compensation from any person, company, firm, or corporation who is or was a customer of Employer during a period of sixty (60) months prior to the termination of Employee's employment unless such customer was or has been a customer of Employee independent and prior to Employee's employment with Employer. Employee agrees not to solicit or accept assignments, employment or compensation from customers in violation of this provision on behalf of himself or any other person, firm, company, or corporation for the periods set forth herein.

Other than for Employer, employee will not, either during Employee's employment with Employer or for a period of twenty-four (24) months thereafter, either directly or indirectly, for himself or any third party, solicit or have any contact with any current customer of Employer, or solicit potential customers if such potential customers are or were identified through leads developed during the course of Employee's employment with Employer, or divert or attempt to divert any existing business of Employer.

Employee will not, either during Employee's employment with Employer or for a period of twenty-four (24) months thereafter, either directly or indirectly, for himself or any third party, solicit, induce, recruit, or cause another person in the employ of Employer to terminate his employment for the purpose of joining, associating, becoming employed with or contracting for any business or activity which is in competition with any product sold, or any business or activity engaged in, by Employer.

## ARTICLE VIII
## CONSENT TO INJUNCTION FOR BREACH OF COVENANTS

Employer and Employee acknowledge the value of the Employee's knowledge, expertise and ability upon the success of the Employer's business and the detrimental effect and irreparable damage upon Employer's business that a violation of the covenants set forth in Articles V, VI, and VII hereof would cause. Employee, therefore, consents to an injunction by any Court of competent jurisdiction enjoining any breach of the covenants set forth in Articles V, VI, and VII hereof by Employee, without prejudice to any other right or remedy to which Employer may be entitled.

## ARTICLE IX
## CONSENT AND RELEASE

In consideration of Employee's employment by Employer, Employee hereby irrevocably consents to use by Employer, its clients, nominees, successors and assigns, of Employee's name, pictorial and/or photographic image and/or likeness, and also sound recordings of Employee's voice, however kept and/or manipulated, for televising, publication and distribution throughout the world. Employee hereby release Employer, from any and all liability arising out of said use or arising out of any blurring, distortion, optical illusion or editing, alteration or use in composite form that may occur or be produced in said use. Employee further waives any right to inspect or approved the finished work, which contains the product of said use. Employee agrees that any and all sales, leases, licenses, copyright and proceeds derived from the product of said use shall be the sole and exclusive property of Employer, it successors and assigns. Employee hereby warrants that he is of legal age to make this consent, release and waiver. Employee agrees that Employer shall be able to use both during and after the term of employment, without limitation and in perpetuity for which Employee hereby grants Employer ownership, permission and license to do.

## ARTICLE X
## EXPENSES

Employer agrees to reimburse Employee for all reasonable expenses of Employee in the conduct of Employee's duties as an employee of Employer, provided, such expenses shall be limited to those approved and authorized by Employer and properly deductible by Employer as ordinary and necessary business expenses for purposes of federal income taxes. Employer will pay approved travel costs incurred in pre-authorized trips, made on behalf of Employer, including, but not limited to airfare, lodging and meals.

## ARTICLE XI
## ENFORCEABILITY

This Agreement shall be enforced in Panama City Beach, Florida and shall be governed by and enforceable under, and pursuant to the laws of the State of Florida. In the event it shall become necessary to employ counsel to construe or enforce any provision(s) of the Agreement by suit or otherwise, the costs thereof, including reasonable attorney's fees, shall be taxed against the losing party thereof.

## ARTICLE XII
## ENTIRE AGREEMENT

This Agreement supersedes all prior agreements and understanding between the parties and may not be changed orally, and no change or attempted waiver of the provisions hereof shall be binding unless in writing and signed by the parties against whom the same is sought to be enforced; provided, however, that the Employee's compensation may be increased at any time by the Employer without in any way affecting any other terms and conditions of this Agreement which in all other respects shall remain in force and effect.

## ARTICLE XIII
## SEVERABILITY OF COVENANTS

A. The Employer and Employee agree that the covenants contained herein are severable, and should be interpreted as such to the extent permissible by law. If any covenant herein is found to be unreasonable by any Court, it is the intention of the parties to abide by the covenant to the extent that the Court finds it to be a reasonable restriction. The covenants on the part of the Employee shall be construed as an agreement independent of any claim or cause of action of the Employee against the enforcement by the Employer of said covenants.

B. Notwithstanding the foregoing, if any clause or provision herein contained is declared void or invalid, then the remainder of this Agreement shall remain operative in full force and effect.

## ARTICLE XIV
## PREVIOUS EMPLOYMENT AGREEMENTS

Employee covenants that prior to the execution of this Agreement, Employee has delivered to Employer full and complete copies of any and all contracts or agreements by and between Employee and any other employer or other party, which contracts or agreements were applicable in any respect by reason of employment or by reason of post-employment covenant at any time. The covenant contained in this paragraph shall be a condition precedent to this Agreement and this Agreement shall be voidable at the option of Employer for breach of Employee of the covenant contained herein, though where this Agreement is voided by Employer, all covenants and obligations of Employee that are intended to survive the term of employment shall at the Employer's election remain in full force and effect.

## ARTICLE XV
## NOTICES

All notices shall be in writing and shall be deemed to have been duly given if delivered personally or if mailed via certified mail postage prepaid to the other party at the address set forth at the end of this Agreement. Any party may change address by giving the other parties hereto notice of such change of address. Notice given as hereinabove provided shall be deemed received by the party to whom it is addressed on the third calendar day following the date on which said notice is deposited in the mail.

## ARTICLE XVI
## WAIVER OF BREACH

The waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

ACCEPTED BY:

By: _____
Toni Davis, CEO
Beach TV Cable Company, Inc. "Employer"

By: _____
Shawn Walsh
"Employee"